**Lisa L. FITZGERALD, Plaintiff,**

v.

**William HENDERSON, Postmaster General, United States Postal Service, Defendant.**

No. 98–CV–1005.

United States District Court, N.D. New York.

Dec. 29, 1998.

Order Denying Reconsideration March 12, 1999.

Featherstonhaugh Conway Law Firm, Albany, For Plaintiff; Richard Casagrande, Esq. Andrew Kirby, Esq.

United States Attorney's Office, United States Postal Service, Law Department–Windsor Field Office, Windsor, CT, For Defendant. Anne Gallaudet, Special AUSA, of Counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Lisa Fitzgerald ("Fitzgerald" or "Plaintiff") brought the instant action on June 25, 1998, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

*et seq.*, against William Henderson, Postmaster General of the United States Post Office ("Defendant") alleging, inter alia, sexual discrimination and harassment, and unlawful retaliation. Specifically, Plaintiff asserts that she was subjected to unlawful sexual discrimination and harassment by her direct supervisor, Timothy Gerling ("Gerling"), which allegedly continued despite Plaintiff's numerous requests for intervention to Dennis King ("King"), Postmaster of the Lake Placid Post Office, where Plaintiff was employed as a letter carrier. Plaintiff seeks declaratory relief and monetary damages, and cross-moves for leave to amend her Amended Complaint.

Defendant now moves for partial dismissal pursuant to Fed.R.Civ.P. 12(b)(1), (6), or in the alternative, for partial summary judgment pursuant to Fed.R.Civ.P. 56, and to strike Plaintiff's claim for punitive damages from the Amended Complaint.[1] Defendant also opposes Plaintiff's cross-motion for leave to amend her Amended Complaint.

## I. Background

Plaintiff filed her Complaint on June 25, 1998. After receiving a final decision from the United States Postal Service ("Postal Service"), rejecting and dismissing the remainder of Plaintiff's sexual discrimination and harassment claims, Plaintiff filed an Amended Complaint on August 19, 1998. The Amended Complaint contains claims under 42 U.S.C. § 2000e *et seq.*, stating various claims sounding in sexual discrimination and harassment.[2] Specifically, Plaintiff alleges claims of disparate treatment based on gender, hostile work environment, and retaliation. *See* Amended Compl. at ¶¶ 119–24. Plaintiff also asserts a claim of constructive discharge related to her being on medical leave since September 25, 1997. *See id.* at

1. Defendant initially moved to strike those portions of Plaintiff's Amended Complaint that deal with (1) allegations detailing events that occurred prior to August 6, 1994, the date Gerling allegedly began his service at the Lake Placid Post Office; (2) a claim for frontpay; and (3) a claim for punitive damages. *See* Def. Mem. of Law at 6–7, 18–20. In his reply papers, however, Defendant withdrew his motion to strike those portions of the Amended Complaint dealing with events occurring prior to August 6,

1994, and Plaintiff's frontpay claim. *See* Def. Reply at 1–2. Thus, Defendant seeks to strike only that portion of the Amended Complaint that moves for punitive damages.

2. Plaintiff's Amended Complaint, which states only one cause of action, asserts claims of retaliation and sexual discrimination and sexual harassment. *See* Amended Compl. at ¶¶ 119–27.

¶ 127. These claims all arise out of the same factual setting.

Plaintiff, a female, was an employee of the Postal Service since 1986 in the position of Grade 5 City Letter Carrier. On or about 1994, Gerling was hired as a supervisor in the Lake Placid Post Office, where he functioned as Plaintiff's direct supervisor.[3] During this time, King was the Postmaster of the Lake Placid Post Office. Soon after Gerling started, Plaintiff alleges in her Amended Complaint, as paraphrased in Plaintiff's Memorandum of Law, that Gerling subjected her to a "series of unwelcome sexual advances" that included:

> [S]tanding in close proximity to [Plaintiff], while softly laying his hand on her shoulder; shaking hands with her on a daily basis, and softly holding her hand for an unusually long period of time; entering her work cubical [sic], standing in close proximity to her, and effectively blocking her only means of egress; staring at her inappropriately while she was working at her sorting station or loading her mail truck; embracing her at the worksite; telling her that she looked nice in shorts; directing her to see him in his office, and then attempting to engage her in non-work related conversations; staring inappropriately at her body and asking her how much she weighed; telling her that he liked her long hair; inviting her to lunch; boasting to her that he will 'father [her] first child'; asking her to meet him after work; running his hand through her hair; offering to teach her 'relaxation techniques'; and inviting her to go dancing with him.

Pl. Mem. of Law at 3–4 (paraphrasing allegations set forth in Plaintiff's Amended Compl. at ¶¶ 14–32, 38, 42, 51–52).

Around October 1994, Plaintiff agreed to meet with Gerling after work to "tell Gerling that she was not interested in engaging in a sexual relationship with him." Amended Compl. at ¶ 46. Her efforts allegedly proved unsuccessful, and from late 1994 into early 1995, Gerling made similar unwelcome advances toward Plaintiff, prompting her to seek the intervention of Postmaster King. These efforts, too, proved unsuccessful. Amended Compl. at ¶¶ 44–70.

In early April 1995, Plaintiff was issued a "letter of warning" by Gerling for declining to work overtime on a weekend in which she was not scheduled to work. The letter of warning represented a formal disciplinary action by the Postal Service. In response, Plaintiff filed a grievance under the collective bargaining agreement to contest the letter of warning. Gerling subsequently retracted the letter in return for Plaintiff's attendance at an "employee assistance program," where she met with a counselor to discuss issues relating to her employment. Plaintiff further asserts that Gerling agreed to withdraw his letter of warning after she threatened to file an EEO complaint alleging sexual harassment against him. Thereafter, Gerling allegedly continued to harass Plaintiff, subjecting her to harsher and more critical treatment than her co-workers.

On September 25, the situation culminated after Gerling allegedly yelled at Plaintiff in a profane manner and pointed his finger at her. Confronted by Gerling's growing hostility and harassment, Plaintiff alleges that she sought medical attention because she was unable to complete her duties. Since this incident, Plaintiff has been on medical leave, "totally disabled from working" and suffering from a number of "psychological and medical conditions . . . directly arising from the trauma and harassment she suffered at the hands of supervisor Gerling." Amended Compl. at ¶¶ 110–13. Plaintiff contacted an EEO Postal Service Counselor on October 24, 1997, and filed her "EEO Complaint of Discrimination in the Postal Service Form" ("EEO Complaint") on January 30, 1998.

## II. Discussion

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under Fed.R.Civ.P. 56(c), if

---

**3.** Gerling's commencement date at the Lake Placid Post Office is a source of contention between the parties. While defendant asserts that Gerling began his employment in late 1994, see Def. Mem. of Law at 3, Plaintiff asserts that Gerling became her supervisor in late 1993 or early 1994. See Amended Compl. at 11.

there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysi-cal doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

The Court is aware of the dangers of summary judgment in connection with a Title VII claim. "Because direct evidence of ... discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (quoting *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994)). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.* (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)).

It is with these standards in mind that the Court addresses the issues presented.

**B. Whether Summary Judgment is Appropriate**

As a threshold matter, Plaintiff contends that Defendant's motion for summary judgment is premature because the parties have yet to conduct any discovery. *See* Pl. Mem. of Law at 10. In that regard, Plaintiff asserts that "[d]ismissing plaintiff's claims without discovery and prior to an answer from defendant would offend the long favored liberal pleading and open and fair discovery policy of the Federal Rules of Civil Procedure." Casagrande Aff. at ¶ 26; Pl. Mem. of Law at 10. However, Plaintiff neither cites to any specific provision in the Federal Rules of Civil Procedure to support this broad assertion nor indicates what facts are sought that would create a genuine issue

of material fact sufficient to preclude summary judgment.

Defendant submits, in support of his motion for partial summary judgment,[4] inter alia, the declaration of his attorney, Anne Gallaudet; and declarations from Gerling and Linda Greaney, an Appeals Review Examiner for the Postal Service. Defendant also attached Plaintiff's EEO Complaint; "Information for Precomplaint Counseling Form" ("Counseling Form"); and an "EEO Investigative Affidavit" ("Investigative Affidavit")[5] completed by Plaintiff. While those documents are referred to in Plaintiff's federal Complaint, they are not annexed as exhibits thereto.

In opposition, Plaintiff submits only a Memorandum of Law, an attorney's affidavit, and a statement of undisputed material facts.[6] Plaintiff, by contrast, has not even submitted an affidavit stating her version of the facts giving rise to the lawsuit.

"Rule 56(f) states that when it appears that the party opposing a motion for summary judgment cannot 'present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had.' Thus, a party seeking such discovery must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dept. of the Navy*, 891 F.2d 414, 422 (2d Cir.1989) ("*Hudson*") (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985)); *Szarka v. Reynolds Metals Co.*, 17 F.Supp.2d 115, 121 (N.D.N.Y.1998). The party opposing summary judgment "must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980) (quoting *Willmar Poultry Co. v. Morton–Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir.1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320, (1976)), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981).

In the present case, the affidavit of Plaintiff's attorney falls well short of demonstrating any of the *Hudson* elements enumerated above.[7] *See Szarka*, 17 F.Supp.2d at 122. Indeed, Plaintiff does not even recognize the application of the four-part inquiry or the requirements set forth in Fed.R.Civ.P. 56(f); rather, she simply asserts in conclusory fashion that summary judgment is premature due to the absence of discovery. Clearly, such a general assertion is insufficient to satisfy the specific requirements of Rule 56(f). *See Hudson*, 891 F.2d at 414; *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994) ("Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense ....") (internal quotations omitted); *United States v. Private Sanitation Ind. Ass'n of Nassau/Suffolk, Inc.*, 995 F.2d 375, 377 (2d Cir.1993) (affirming Rule 56(f) denial when affidavit did not describe "in specific terms evidence that might be forthcoming and would demonstrate that a genuine issue actually existed"); *Tucker*

---

**4.** Although Defendant's motion moves for "partial" summary judgment, the Court notes that Defendant's moving papers address all claims raised by Plaintiff.

**5.** The EEO Investigative Affidavit was prepared on June 27, 1998, almost five months subsequent to Plaintiff filing of her EEO Complaint.

**6.** Notably, Plaintiff titled her opposition papers as "Memorandum of Law in Opposition to De-

fendant's Motion to Dismiss/Summary Judgment." Consequently, Plaintiff was on notice that Defendant's motion would be treated as a motion for summary judgment.

**7.** Notably, the affidavit supplied by Plaintiff's attorney contains proposed language should the Court allow Plaintiff to amend her Amended Complaint.

*Leasing Capital Corp. v. Marin Med. Management, Inc.*, 833 F.Supp. 948, 960–61 (E.D.N.Y.1993) ("The Court may reject a request for further discovery pursuant to Rule 56(f) if the request is based on pure speculation as to what would be discovered.").

Furthermore, "Rule 56(f) is not appropriate where the discovery allegedly desired 'pertains to information already available to the non-moving party.'" *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F.Supp. 869, 894 (S.D.N.Y.1997) (quoting *Frankel v. ICD Holdings S.A.*, 930 F.Supp. 54, 66 (S.D.N.Y.1996)). Here, Plaintiff alleges numerous grounds in her Title VII claim against Defendant. She should, therefore, be able to demonstrate, at the very least, a material issue of fact to defeat summary judgment through her own affidavit, and by relying on her own witnesses and documents. Accordingly, Plaintiff has failed to show that summary judgment is premature under Rule 56(f).

Additionally, Plaintiff's reliance on her Amended Complaint to refute the attached declarations and documentary evidence in support of Defendant's motion for summary judgment is plainly improper. It is axiomatic that when the moving party has supported the motion by affidavits and documentary evidence, the non-movant

> [M]ay not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [ ] Rule [56], must set forth specific facts showing that there is a genuine issue [of material fact] for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Because Plaintiff failed to respond with affidavits or otherwise as required by Rule 56(e), the only question that remains is whether summary judgment is "appropriate"; that is, whether Defendant's evidentiary material establish an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir.1996); *see also* Charles A.

Wright & Arthur R. Miller, 10A Federal Practice and Procedure § 2738, at 520–28 (2d ed.1983).

### III. Plaintiff's Title VII Claims

 Plaintiff alleges claims of employment discrimination, harassment, and retaliation in violation of Title VII. Specifically, 42 U.S.C. § 2000e–16 provides the exclusive remedy for claims alleging discriminatory practices in federal employment based upon race, color, religion, sex, or national origin. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 829–35, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Boyd v. United States Postal Serv.*, 752 F.2d 410 (9th Cir.1985). *Smith v. United States Postal Serv.*, 742 F.2d 257 (6th Cir.1984). Under that section, the right to bring a federal action is predicated upon the timely exhaustion of administrative remedies, as established by Equal Employment Opportunity Commission ("EEOC") regulations. *See Brown*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Butts v. New York Dep't of Housing, Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993).

In addition, there are special regulations governing labor-related actions by federal employees, requiring federal agencies such as the Postal Service to adopt procedures for processing discrimination complaints by their employees. *See* 29 C.F.R. §§ 1614.103(b)(3), 1614.104–.106 (1998); *see generally*, 29 C.F.R. § 1614 *et seq.* (Federal Sector Equal Employment Opportunity Regulations). These procedures provide that, "[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." *See* 29 C.F.R. § 1614.105(a). An employee must contact the Counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *See* 29 C.F.R. § 1614.105(a)(1). The 45–day limit may be extended by the Counselor if the employee shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know

and reasonably should not have known that the discriminatory matter or personnel action occurred, or if some other circumstances beyond the employee's control justify extension. *See* 29 C.F.R. § 1614.105(a)(2).

A timely filing of an EEOC charge is not, however, a "jurisdictional prerequisite" to initiating a suit. *See Boyd,* 752 F.2d at 414; *McNight v. Dormitory Auth. of the State of New York,* 995 F.Supp. 70, 76 (N.D.N.Y.1998). Thus, the 45 day time limit functions as a "statute of limitations and is subject to waiver, estoppel, and equitable tolling." *Id.* The agency is required to dismiss complaints that fail to comply with the time limits, see 29 C.F.R. § 1614.107(b), and is required to issue a final agency decision including notice of the employee's right to appeal. *See* 29 C.F.R. § 1614.110. An employee may appeal the agency's final decision to the Equal Employment Opportunity Commission within 30 days of the employee's receipt of the final decision. *See* 29 C.F.R. §§ 1614.401(a), 1614.402(a)-(b). Alternatively, the employee may file a civil action in the appropriate United States District Court within 90 days of the employee's receipt of the final decision. *See* 29 C.F.R. § 1614.408(a). To withstand Defendant's summary judgment motion, Plaintiff must demonstrate that she has complied with these requirements.

### A. Retaliation Claim

#### 1. Exhaustion of Administration Remedies—Reasonably Related Claims

Defendant argues that the cause of action sounding in retaliation is not included in, nor reasonably related to, any EEOC charge and is therefore barred due to Plaintiff's failure to exhaust her administrative remedies.

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts,* 990 F.2d at 1401 (citing *Stewart v. United States Immigration and Naturalization Serv.,* 762 F.2d 193, 198 (2d Cir.1985); *Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967

(2d Cir.1984); *Goodman v. Heublein, Inc.,* 645 F.2d 127, 131 (2d Cir.1981); *Kirkland v. Buffalo Bd. of Educ.,* 622 F.2d 1066, 1068 (2d Cir.1980)). The purpose of the exhaustion requirement is to "encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Id.* The filing requirement provides notice to the party charged with a violation and gives that party an opportunity to comply with Title VII before the commencement of a lawsuit and to participate in conciliation. *See Davis v. Weidner,* 596 F.2d 726, 729 (7th Cir.1979); *McNight,* 995 F.Supp. at 76.

#### a. Whether the Allegations of Retaliation Were Included in an EEOC Charge

A complaint "must be sufficiently precise to identify the aggrieved individual and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint." *See* 29 C.F.R. § 1614.106(c). In this case, Plaintiff filed her EEO Complaint on February 2, 1998, alleging "sexual discrimination and sexual harassment for the period October 14, 1994 to September 25, 1997." EEO Complaint, at ¶ 5. Plaintiff goes on to allege that "Gerling began a campaign of sexual discrimination and harassment against [Plaintiff]." *Id.* at ¶ 8. Notably, these statements fail to mention any reference to a claim of retaliation. Furthermore, Plaintiff failed to either mark retaliation as a type of discrimination alleged in her EEO Complaint or identify the prior protected EEO activity underlying such a claim. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998); *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998); *Montalvo v. United States Postal Serv.,* 1996 WL 935448, at *1 (2d Cir. April 19, 1996). A careful reading of the complaint evinces allegations of sexual discrimination and harassment against Gerling only. Thus, Plaintiff's EEO Complaint fails to adequately place Defendant on notice of potential allegations of retaliation.

Plaintiff argues that "the underlying administrative complaint does allege that Gerling retaliated against [ ] Fitzgerald because she resisted his sexual advances." Pl. Mem.

of Law at 18; EEO Complaint at ¶¶ 10, 15. This, however, is insufficient to establish a claim of prior protected EEO activity for which Gerling retaliated against the Plaintiff. *See Rashid v. Beth Israel Med. Ctr.*, 1998 WL 689931, at *2 (S.D.N.Y. October 2, 1998) (holding that rejection of sexual advances is not a protected activity under Title VII); *Del Castillo v. Pathmark Stores, Inc.*, 941 F.Supp. 437, 438 (S.D.N.Y.1996). As the Court noted in *Del Castillo:*

> While [ ] protected activity sometimes consists of filing a lawsuit or formal complaint with an agency, it may also take the form of less formal protests, such as making complaints to management, writing critical letters to customers, or expressing support of co-workers who have filed charges. But even the broadest interpretation of a retaliation claim cannot encompass instances where the alleged "protected activity" consists simply of declining a harasser's sexual advances, which is all that is alleged here by way of "protected activity." If it were otherwise, every harassment claim would automatically state a retaliation claim as well.

941 F.Supp. at 438–39.

Notably, it is not until Plaintiff filed her federal complaint in June 1998 that Plaintiff indicates that Gerling's retaliation stemmed, in part, from her threat to file an EEO Complaint. *See* Amended Compl. at ¶ 88. Indeed, Plaintiff concedes that she "did not, in any of her administrative documents, specifically allege that there was retaliation against her for threatening to file an EEO complaint in April 1995." Pl. Mem. of Law at 18. Accordingly, Plaintiff's unambiguous language in her EEO Complaint reasonably limited the inquiry of the agency solely to allegations of sexual harassment and discrimination. While the EEOC's failure to investigate a particular claim in a charge would not preclude the subsequent commencement of a lawsuit based upon the charge as a whole, see *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989), the aggregation of the above-listed factors militates against a finding that the EEO Complaint properly included a charge of retaliation filed with the Postal Service. Accordingly, the Court finds that there was no allegation of retaliation in the charge filed with the Postal Service.

Plaintiff responds that she should nevertheless be permitted to raise her retaliation claim "because it is reasonably related to the charge and specific incidents of discrimination ... raise[d] in [Plaintiff's] administrative complaint, and thus would fall within the scope of the EEO investigation which could reasonably expected to have grown out of the charge of discrimination." Pl. Mem. of Law at 18–19. Thus, Plaintiff argues that the exceptions to the exhaustion requirement apply. The Second Circuit has "recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Butts*, 990 F.2d at 1402.

### 1. Whether the Conduct Falls Within the Scope of the EEOC Investigation

 The first "reasonably related" claim is "essentially an allowance of loose pleading" and allows "claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)). It is of no moment whether the EEOC actually investigated the claim; it is the opportunity to do so that is key. *See McNight*, 995 F.Supp. at 77; *Dargento v. Bally's Holiday Fitness Cntrs.*, 990 F.Supp. 186, 193 (W.D.N.Y.1997). However, "the loose pleading allowance is not satisfied by vague, generalized statements. Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably." *Cooper v. Xerox Corp.*, 994 F.Supp. 429, 432 (W.D.N.Y.1998).

 In the present matter, the January 1998 charge filed with the Postal Service unambiguously stated that Plaintiff limited her charges to sexual discrimination and sexual harassment for the period October 1994 through September 1997. *See* EEO Complaint at ¶¶ 5, 8. As indicated previously,

Plaintiff failed to either list retaliation as a type of discrimination on the EEO Complaint Form or identify the protected activity that underlies such a retaliation claim. Thus, the investigation into Plaintiff's charges, the Postal Service's handling of these charges, and even the underlying reasons for the charges, would not fall within the scope of, and could not reasonably be expected to grow into, an investigation of a claim of retaliation. *See, e.g., Szarka,* 17 F.Supp.2d at 124 (claim of hostile work environment does not reasonably grow out of a claim of sex and age discrimination); *Cooper,* 994 F.Supp. at 433 (charge of racial discrimination does not support claim for hostile work environment or harassment); *Tavarez v. Chemical Bank,* 1998 WL 337071, at *3 (S.D.N.Y. June 25, 1998) ("A charge of disability discrimination cannot reasonably be expected to grow out of a charge of discrimination based on national origin."); *DeJesus v. Allstate Ins. Co.,* 1998 WL 241726, at *4 (S.D.N.Y. May 11, 1998) (a claim of redlining is not reasonably related to a charge of racial discrimination); *Harris v. New York City Dept. of Homeless Servs. Eligibility Unit,* 1998 WL 205334, at *9 (S.D.N.Y. April 28, 1998) (a charge of gender discrimination and a retaliation claim for filing sexual harassment charges fails to satisfy the reasonably related test); *Carrasco v. New York City Off–Track Betting Corp.,* 858 F.Supp. 28, 33 (S.D.N.Y.1994) (retaliation claim not reasonably related to charge of sexual discrimination), *aff'd,* 50 F.3d 3 (2d Cir.1995). Thus, this exception does not apply.

### 2. Retaliation

 "The second type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge." *Butts,* 990 F.2d at 1402. In

these cases, the exhaustion requirement is relaxed "based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself." *Id.* Thus, this exception addresses those situations where the plaintiff has filed an EEOC charge and the EEOC has the "opportunity to investigate and mediate the claims arising from the underlying discriminatory acts alleged." *Id.* Notably, Plaintiff did not allege in her EEO Complaint that Gerling retaliated against her for filing an EEO charge; rather, Plaintiff alleged that the retaliation resulted from her rejection of Gerling's sexual advances. *See* EEO Complaint at ¶¶ 21–24. Moreover, because the facts underlying Plaintiff's retaliation claim occurred *prior* to the filing of her EEO Complaint, this exception is inapplicable.

### 3. Allegations of Further Incidents of Discrimination

"The third type of 'reasonably related' claim is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." [8] *Butts,* 990 F.2d at 1402. Because the EEO Complaint here alleged sexual discrimination and sexual harassment arising from Gerling's actions, it cannot therefore be said that Plaintiff's claim of retaliation is a further incident of discrimination carried out in the same manner alleged in the EEO Complaint. *See Butts,* 990 F.2d at 1402. Thus, this exception also is inapplicable. Accordingly, Plaintiff's cause of action based upon retaliation is barred due to her failure to exhaust administrative remedies.

Even if the Court was to find the above allegations reasonably related to Plaintiff's EEO Complaint, these allegations occurred

---

**8.** Notably, many of Plaintiff's allegations occurred prior to Plaintiff filing her EEO Complaint. As this Court recognized in *McNight,* there is authority that the "reasonably related" test only applies to satisfy exhaustion of acts occurring subsequent to the filing of the administrative charge. *See McNight,* 995 F.Supp. at 78 n. 3; *see also Butts,* 990 F.2d at 1401 ("A district court only has jurisdiction to hear claims that . . . are based on conduct *subsequent to* the EEO charge which is reasonably related to that alleged in the EEOC charge") (emphasis added)

(internal quotation marks and citations omitted); *Alfano v. Costello,* 940 F.Supp. 459, 469 (N.D.N.Y.1996) (reasonably related test applies only to "discriminatory conduct that occurred *after* a plaintiff filed her EEOC charge") (emphasis added). However, this issue appears unsettled. While *Butts* distills a test that by its terms applies only to post-EEOC filing conduct, the *Butts* opinion, in fact, analyzed the pre-EEOC allegations under the reasonably related test. *See Butts,* 990 F.2d at 1403.

more than 45 days prior to her filing with the Postal Service.[9] Thus, they are time-barred. Moreover, Plaintiff is unable to toll the limitations period by availing herself of the continuing violation doctrine.

■■■■ "Under [the] continuing violation doctrine, where the defendant has engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation. In such circumstances, if the charge has been filed [ ] later than [the prescribed limitations period] after the last act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well." *Choi v. Chemical Bank*, 939 F.Supp. 304, 311 (S.D.N.Y.1996) (internal quotation marks and citations omitted). Stated differently, when evidence of an ongoing discriminatory policy or practice is present, a court may consider all of an employer's actions allegedly taken pursuant to such policy, even if some are time-barred. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996). Nonetheless, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn*, 159 F.3d at 765 (citing *Lambert v. Genesee Hosp.*, 10 F.3d 46, 52 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994)). A continuing violation may be found if the proof shows a specific and ongoing policy or practice of discrimination, or if an employer allows specific, related instances of discrimination to continue unremedied such that those instances amount to a discriminatory practice or policy. *Van Zant*, 80 F.3d at 713; *Cornwell*, 23 F.3d at 703; *Butts*, 990 F.2d at 1404. Nevertheless, "the continuing violation doctrine is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances." *Lloyd v. WABC–TV*, 879 F.Supp. 394, 399 (S.D.N.Y.1995); *see also Carrasco*, 858 F.Supp. at 31 (" 'The Second Circuit has recently reasserted the law of this Circuit that, unless the plaintiff alleges discrimination by virtue of a specific official policy or mechanism, claims of continuing violation will not lie.' ") (quoting *Page v. New York City Off–Track Betting, Inc.*, 1993 WL 426865, at *2 (S.D.N.Y. October 22, 1993) (noting that the continuing violation theory is to be applied only if "warranted by compelling circumstances")); *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1415 (S.D.N.Y.1989); *LaBeach v. Nestle Co., Inc.*, 658 F.Supp. 676, 687 (S.D.N.Y.1987). Accordingly, courts have limited the applicability of the doctrine to instances involving a specific official policy or mechanism. *See Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635 (2d Cir.1985) (discriminatory seniority list), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2d Cir.1981) (discriminatory fire department tests), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).

■■■■ Plaintiff's claim, in its entirety, sounds in sexual discrimination and sexual harassment. She makes no allegations that Defendant maintained a retaliatory employment policy. Thus, Plaintiff's allegations of retaliation cannot be read to state a continuing violation claim. *See Quinn*, 159 F.3d at 765; *Lambert*, 10 F.3d at 53; *Ryan v. New York State Thruway Auth.*, 889 F.Supp. 70, 77 (N.D.N.Y.1995) (citing *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122, *reh'g denied*, 474 U.S. 1015, 106 S.Ct. 552, 88 L.Ed.2d 479 (1985)).

Because Plaintiff's EEO Complaint and federal complaint fail to allege a formal and ongoing retaliatory policy or mechanism, she may not avoid the 45 day limitations period. Plaintiff's retaliation claim is therefore also dismissed as time barred.

## B. Disparate Treatment Claim

Plaintiff's second claim alleges that she has "been the victim of disparate treatment with respect to her terms, conditions and privileges of employment because she is fe-

---

9. In her EEO Complaint and federal complaint, Plaintiff alleges that Gerling's sexual advances began around October 1994 and the letter of warning issued by Gerling which prompted Plaintiff's threat to file an EEO complaint occurred around April 1995. *See* EEO Complaint at ¶¶ 8–9, 13–14; Amended Compl. at ¶¶ 32–36, 62–67, 78–89.

male, and because she refused to engage in a sexual relationship with Gerling, her direct supervisor." Amended Compl. at ¶ 124. Specifically, Plaintiff states that as a result of rejecting Gerling's sexual advances, she was "continually subjected [ ] to harsher and more critical treatment than any of her co-workers." Amended Compl. at ¶ 96. This disparate treatment was evidenced by instances where:

> [S]imilarly situated male postal workers under [ ] Gerling's supervision were not subject to ... mistreatment as [Plaintiff was] ... and other female postal workers who have had sexual relations with [ ] Gerling have been treated more favorable than [Plaintiff] and have not been subject to [ ] Gerling's hostility, humiliation, anger, intimidation, and improper discipline [as] suffered by [Plaintiff].

EEO Complaint at ¶¶ 26–27.

Plaintiff alleges that Gerling's mistreatment began in early 1995, and continued through September 1997, where Plaintiff "was prohibited from taking earned days off, forced to work unwanted overtime, and forced to work above and beyond the level of competence of others similarly situated" for rejecting Gerling's sexual advances. EEO Complaint at ¶¶ 20–21. During this three year period, Plaintiff reported Gerling's actions to Postmaster King three times. *See* Amended Compl. at ¶ 99. Plaintiff further argues that these conditions "culminated in an incident on or about September 25, 1997, during which Gerling screamed a profanity at Plaintiff and physically intimidated her" during a meeting to discuss Plaintiff's job performance. *See id.* at ¶ 28.

Defendant argues that, with the exception of the September 25, 1997 incident, all of Plaintiff's allegations of disparate treatment arose later than 45 days from the time Plaintiff contacted an EEO Postal Service Counselor.[10] Thus, Defendant contends that all allegations related to conduct arising before September 9, 1997 are timed barred and that the remaining September 25, 1997 incident is insufficient, as a matter of law, to constitute disparate treatment. *See* Def. Mem. of Law

at 10. Plaintiff counters that the continuing violation theory tolled the applicable limitations period.

In the present case, Plaintiff's continuing violation argument fails because she has not alleged an "ongoing discriminatory practice or policy" in her administrative complaint. *McNight,* 995 F.Supp. at 79; *see also Quinn,* 159 F.3d at 765; *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir. 1997) (holding that continuing violation theory is inapplicable to instances where "discrete incidents of discrimination [ ] are unrelated to an identifiable policy or practice"). Rather than detailing specific instances evincing a formal discriminatory practice or policy, Plaintiff merely alleges hostile behavior by Gerling directed solely at Plaintiff for rejecting Gerling's sexual advances. *See Lightfoot,* 110 F.3d at 907 ("The continuing violation exception applies when there is evidence of specific discriminatory practices, such as the repeated use of discriminatory seniority lists or employment tests."). Moreover, the September 1997 incident filed within the limitations period neither constitutes an independently actionable discriminatory act nor an incident in furtherance of an ongoing policy of discrimination. *See Lambert,* 10 F.3d at 53 (holding that the continuing violation exception applies to "any incident of discrimination in furtherance of an ongoing policy of discrimination"); *Kassaye v. Bryant College,* 999 F.2d 603, 606 (1st Cir.1993) ("For appellant's continuing violation theory to succeed, [the timely filed] incident must have constituted an independently actionable discriminatory act"). Similarly, Plaintiff's federal complaint fails to allege sufficient facts to give rise to a continuing violation. *See, e.g., Dixit v. City of New York Dep't of General Servs.,* 972 F.Supp. 730, 736 (S.D.N.Y.1997); *Neilson v. Colgate–Palmolive Co.,* 1997 WL 297051, at *1 (S.D.N.Y. June 4, 1997). Accordingly, the continuing violation doctrine does not apply to render Plaintiff's claims of discrimination timely. Thus, the September 25, 1997 incident is the only allegation that was timely filed in Plaintiff's administrative complaint.

10. As previously noted, Plaintiff contacted an EEO Postal Service Counselor on October 24, 1997, and filed her EEO Complaint on January 30, 1998.

■ To establish a prima facie case of disparate treatment, Plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment decision; and (4) that the decision took place under circumstances giving rise to an inference of discrimination. *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998).

■ Plaintiff's disparate treatment claim must fail because she cannot show that she suffered an adverse employment action as a result of the September 25, 1997 incident in which Gerling yelled at Plaintiff, used profanity, and pointed his finger at her in an intimidating manner during a meeting. *See* Amended Compl. at ¶¶ 104–05; EEO Complaint at ¶ 28. This, in and of itself, is insufficient to show that Plaintiff suffered a materially adverse change in the terms and conditions of her employment. *See Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir.) (employee's feeling "frightened" and "intimidated" does not constitute adverse employment action) (citing *McKenney v. New York City Off-Track Betting Corp.*, 903 F.Supp. 619, 623 (S.D.N.Y.1995)), *cert. denied*, —— U.S. ——, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997); *see also United States v. New York City Transit Authority*, 97 F.3d 672, 677 (2d Cir. 1996) (requiring treatment that affects the employee's work, working conditions, or compensation). *Compare Austin*, 149 F.3d at 153 (unreasonable workload and forced overtime without compensation constitutes discrimination with respect to terms and conditions of plaintiff's employment); *Annis v. County of Westchester*, 136 F.3d 239, 248 (2d Cir.1998) (discriminatory denial of overtime pay on basis of sex violates Title VII).

Plaintiff alleges a claim of constructive discharge to establish the requisite adverse employment action. Specifically, Plaintiff alleges that, as a result of Gerling's alleged misconduct, and King's failure to remedy the situation, she has suffered a medical disability for which Plaintiff has been on medical leave since September 25, 1997 and is currently receiving medical treatment.[11]

■ Constructive discharge occurs when "an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova*, 92 F.3d at 89. Working conditions are deemed intolerable if they are " 'so difficult or unpleasant that a reasonable person in the employee's shoes should have felt compelled to resign.' " *Id.* (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987); *Christopher–Ketchum v. Agway Energy Prods.*, 988 F.Supp. 610, 616 (N.D.N.Y. 1997). A claim of constructive discharge cannot be maintained, however, if the employee merely alleges dissatisfaction with the nature of his assignments, *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325–26 (2d Cir.1983), unfair criticism, *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1160–61 (3d Cir.), *cert. denied*, 510 U.S. 964, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993), or if the working conditions are difficult or unpleasant. *See Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir.1993).

■ The September 1997 incident is insufficient to sustain a claim of constructive discharge. Gerling's use of profanity and yelling and pointing his finger did not make Plaintiff's working conditions "so intolerable that [she] was forced into an involuntary resignation." *Lopez*, 831 F.2d at 1188. Indeed, Gerling's actions neither drastically altered Plaintiff's working conditions nor compelled a reasonable person in her position to resign. Thus, Plaintiff has failed to establish a prima facie case of disparate treatment.

### C. Hostile Work Environment Claim

Plaintiff's third claim alleges sexual harassment based on a hostile work environment. Specifically, Plaintiff alleges that soon after Gerling started, he subjected her to unwelcome sexual advances that included:

> [S]tanding in close proximity to [Plaintiff], while softly laying his hand on her shoulder; shaking hands with her on a daily basis, and softly holding her hand for an

11. Specifically, Plaintiff alleges that she has been diagnosed with "post traumatic stress disorder and severe depression," requiring her to undergo "ongoing psychiatric and psychological counseling and treatment." EEO Complaint at ¶ 33.

unusually long period of time; entering her work cubical [sic], standing in close proximity to her, and effectively blocking her only means of egress; staring at her inappropriately while she was working at her sorting station or loading her mail truck; embracing her at the worksite; telling her that she looked nice in shorts; directing her to see him in his office, and then attempting to engage her in non-work related conversations; staring inappropriately at her body and asking her how much she weighed; telling her that he liked her long hair; inviting her to lunch; boasting to her that he will 'father [her] first child'; asking her to meet him after work; running his hand through her hair; offering to teach her 'relaxation techniques'; and inviting her to go dancing with him.

Pl. Mem. of Law at 3–4; *see also* Amended Compl. at ¶¶ 14–32, 38, 42, 51–52.

Notably, the events that give rise to Plaintiff's hostile work environment claim occurred as early as October 1994. At most, Plaintiff's administrative charge and federal complaint describe "multiple incidents of discrimination" directed solely at Plaintiff, rather than a formal or widespread identifiable discriminatory policy or practice. *See Quinn*, 159 F.3d at 765; *Lambert*, 10 F.3d at 53. Indeed, many of the allegations supporting Plaintiff's hostile work environment claim address actions that occurred only once or on a few occasions. *See* EEO Complaint at ¶¶ 12–13, 16; Amended Compl. at ¶¶ 21–26, 32, 64–65, 71.

Similar to the Court's analysis of Plaintiff's disparate treatment claim, the September 1997 incident filed within the limitations period neither constitutes an independently actionable discriminatory act nor an incident in furtherance of an ongoing policy of discrimination. *See Lambert*, 10 F.3d at 53; *Kassaye*, 999 F.2d at 606. Accordingly, Plaintiff is unable to use the continuing violation theory to render timely those allegations falling outside the limitations period. Thus, the September 25, 1997 incident is the only allegation that was timely filed in Plaintiff's administrative complaint.

 To establish a prima facie case of a hostile work environment, Plaintiff must allege conduct " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *Schwapp*, 118 F.3d at 110. In determining whether an employee's environment is hostile or abusive, courts employ a totality of circumstances approach and consider " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance.' " *Id.; see also Schwapp*, 118 F.3d at 111 (examining the quantity, frequency, and severity of the underlying conduct); *Torres*, 116 F.3d at 631 (requiring incidents to be repeated and continuous); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995) (holding that a hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult"); *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir.1989) ("The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."). The Court is cognizant, however, that "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability." *Tomka*, 66 F.3d at 1305; *see also Torres*, 116 F.3d at 631 n. 4. These factors must be evaluated from both an objective and subjective viewpoint. *See id.; Gallagher*, 139 F.3d at 347; *Schwapp*, 118 F.3d at 110 ("The conduct alleged must be severe and pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.' ") (citing *Harris*, 510 U.S. at 22, 114 S.Ct. 367).

 The September 1997 incident is not sufficiently severe to constitute actionable sex harassment or constructive discharge. Indeed, Gerling's actions during that meeting neither drastically altered Plaintiff's working conditions nor compelled a reasonable person in her position to resign. Thus, Plaintiff has

failed to establish a prima facie case of hostile work environment.

### D. Leave to Amend the Amended Complaint

Plaintiff has cross-moved to add allegations "concerning constructive discharge; to clarify allegations about Gerling's initial employment date; and to incorporate the underlying documents filed before the EEOC into the complaint." Pl. Mem. of Law at 2. Defendant opposes Plaintiff's request for leave to amend the Amended Complaint as "[Plaintiff] now wishes to change the dates of the events to conform with probative evidence provided by Defendant [ ] to defeat a dispositive motion." Def. Reply Mem. of Law at 5. The Court agrees.

Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." Such leave should be denied, however, when it would be futile, cause undue delay or prejudice, or when it is sought in bad faith. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■■■ In this case, it would be futile to permit Plaintiff to file a second Amended Complaint, which omits and alters admissions made in the Amended Complaint and raises allegations that are timed barred.[12] *See, e.g., Austin,* 149 F.3d at 155. In addition, for the reasons stated earlier, Plaintiff's proposed allegations regarding her resignation cannot, as a matter of law, give rise to a claim of constructive discharge. Accordingly, Plaintiff's request for leave to amend her Amended Complaint is denied.[13]

### III. CONCLUSION:

For all of the foregoing reasons, then, it is hereby

ORDERED,

that Defendant's motion for summary judgment is GRANTED, dismissing Plaintiff's Amended Complaint in its entirety; and it is further

ORDERED, that Plaintiff's cross-motion for leave to amend her Amended Complaint is DENIED in all respects.

IT IS SO ORDERED.

### MEMORANDUM—DECISION & ORDER

The procedural background and facts of this case are set forth in the Court's decision in *Fitzgerald v. Henderson,* 490 F.Supp.2d 36 (N.D.N.Y.1998), familiarity with which is presumed. In that decision, the Court granted defendant's motion to dismiss the Complaint pursuant to FED.R.CIV.P. 56. Judgment was entered on January 5, 1999. On January 14, 1999, plaintiff Lisa Fitzgerald ("plaintiff" or "Fitzgerald") filed the present motion for reconsideration pursuant to FED.R.CIV.P. 59(e), asserting that the Court erred in dismissing her hostile work environment claim.[1]

### I. Discussion

Reconsideration of a prior decision is discretionary and the factors that generally compel reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992); *see also Morris v. State of New York,* 1995 WL 155953, at *2 (N.D.N.Y. April 5, 1995); *Waye v. First Citizen's Nat'l Bank,* 846 F.Supp. 310, 314 (M.D.Pa.), *aff'd,* 31 F.3d 1175 (3d Cir.1994). It is well-settled that "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the ap-

---

**12.** With respect to Plaintiff's request to incorporate documents filed with the EEO agency of the Postal Service to her Amended Complaint, the Court appropriately considered these documents in deciding Defendant's summary judgment motion. *See McNight,* 995 F.Supp. at 74–75.

**13.** Because the Court is dismissing Plaintiff's Amended Complaint in its entirety, Defendant's

request to strike those factual allegations concerning Plaintiff's request for punitive damages is rendered moot.

**1.** Plaintiff's reconsideration motion is limited to her hostile work environment claim and does not challenge the Court's dismissal of her retaliation and disparate claims.

ple'...." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998); *see also Morris*, 1995 WL 155953, at *2 (Motion for reconsideration " 'is not to be used as a means to reargue matters already argued and disposed of by prior rulings or to put forward additional arguments which it could have made but neglected to make before judgement.' ") (quoting *Aquilio v. Police Benevolent Ass'n of New York State Troopers, Inc.*, 1994 WL 494639, *2, 1994 U.S.Dist. LEXIS 12813, at *7 (N.D.N.Y. August 15, 1994), *appeal dismissed without opinion*, (2d Cir.1994) and *McDowell Oil Serv. v. Interstate Fire and Cas.*, 817 F.Supp. 538, 541 (M.D.Pa.1993)); *Waye*, 846 F.Supp. at 314. The motion for reconsideration "is an extraordinary remedy which should be used sparingly," 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2810.1 (West 1995), and therefore, " 'is not intended merely to ... give a disappointed litigant another chance.' " *Morris*, at *2 (quoting *Agola v. Hagner*, 678 F.Supp. 988, 991 (E.D.N.Y.1987)). Moreover, the decision of whether to grant a motion for reconsideration lies within the sound discretion of the district court. *See Doolittle v. Ruffo*, 1996 WL 167662, at *2 (N.D.N.Y. April 1, 1996). Naturally, a court is disinclined to reconsider a prior decision unless a party has satisfied one of the three factors noted above.

In requesting that this Court reconsider its dismissal of her hostile work environment claim, plaintiff argues that: (1) she did not have notice that defendant moved for summary judgment on that claim; and (2) the Court erred by not considering her verified complaint and EEO affidavit, which plaintiff contends raised genuine issues of material fact sufficient to preclude summary judgment on her hostile work environment claim. *See* Pl.Mem. of Law at 1. In response, defendant argues that the factual allegations and legal arguments in plaintiff's opposition papers clearly establish that she was on notice that "the Court should and would address the viability of her hostile work environment claim...." Def.Mem. of Law at 8. Defendant also notes that in deciding defendant's summary judgment motion, the Court appropriately considered documents filed with the EEO agency which were not incorporated into the Amended Complaint. *See id.* at 9.

### A. Whether Plaintiff Was on Notice of Summary Judgment Regarding Hostile Work Environment Claim

The Court addressed the issue of notice when it considered defendant's summary judgment motion based on plaintiff's contention that summary judgment was premature because the parties had not yet conducted discovery. *See Memorandum–Decision & Order*, at 495–96. In determining that summary judgment was appropriate, the Court noted that plaintiff's opposition papers indicated that she was on notice that defendant's motion would be treated as a motion for summary judgment. *See id.* at 496 n. 6. The Court also noted that although defendant's motion moved for partial summary judgment, his moving papers addressed *all* of the claims raised by plaintiff under Title VII. *See id.* at 496 n. 4.

The factual allegations and legal arguments presented in plaintiff's opposition papers also addressed, at considerable length, plaintiff's hostile work environment claim. These factual allegations included unwelcome sexual advances, see Pl.Mem. of Law at 3 (citing Amended Complaint at ¶¶ 14–32; 38, 42, 51–54, 56), and attempts by her supervisor, Timothy Gerling, ("Gerling") to engage in a sexual relationship with Fitzgerald. *See id.* at 4 (citing Amended Complaint at ¶¶ 73–74). When these sexual advances were rejected, plaintiff alleged that Gerling's attitude toward her "shifted to one of *hostility*," and Gerling became "increasingly *hostile and abusive* towards plaintiff," *id.* at 4–5 (emphasis added) (citing Amended Complaint at ¶¶ 72, 79–82, 85–90), requiring Postmaster King to intervene and "stop Gerling's *hostile and harassing behavior* toward [plaintiff]." *Id.* at 5 (emphasis added) (citing Amended Complaint at ¶¶ 99–101). Significantly, these allegations, which directly relate to plaintiff's hostile work environment claim, were relied on by plaintiff in the first point of her Memorandum of Law to establish a "viable cause of action under Title VII" sufficient to deny defendant's motion for summary judgement. *Id.* at 8. In that same section, plaintiff fur-

ther argues that she "has sufficiently pleaded claims of *hostile work environment* and disparate treatment." *Id.* at 9 (emphasis added). Thus, these allegations and arguments contradict plaintiff's contention that she was not on notice that her hostile work environment claim would be considered in defendant's summary judgment motion.

An examination of plaintiff's legal arguments yields a similar conclusion. Specifically, plaintiff argued that she was entitled to rely on the continuing violation doctrine to establish a claim of hostile work environment. *Id.* Acknowledging that the hostile work environment claim "cannot be so easily separated" from her disparate treatment claim, plaintiff further argued that "defendant's effort to separate plaintiff's case into separate theories should be rejected." *Id.* To support that argument, plaintiff cited to the Supreme Court's decision in *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), a case which considered "whether conduct, to be actionable as *abusive work environment harassment,* must seriously affect an employee's psychological well-being or lead the plaintiff to suffer injury." 510 U.S. at 20, 114 S.Ct. 367 (emphasis added).

In yet another section of her Memorandum of Law, plaintiff argued that the continuing violations doctrine was applicable to her hostile work environment claim. *See* Pl.Mem. of Law at 13–14. To support that argument, plaintiff cited to the Supreme Court's decision in *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), a case which dealt with standards for determining the existence of a hostile work environment. In a clear example that plaintiff was on notice that defendant's summary judgment motion addressed the hostile work environment claim, plaintiff then argued:

> [T]he same issues of fact which *preclude summary judgment as to whether a hostile work environment* exists should also preclude summary judgment on the existence of a continuing violation.

*Id.* at 14 (emphasis added).

Thus, plaintiff's reliance on *Harris* and *Meritor Savings Bank* to establish disparate treatment *and* hostile work environment

claims under Title VII demonstrated that she was on notice that defendant's motion for summary judgment addressed the hostile work environment claim.

Defendant's moving papers also notified plaintiff that the hostile work environment claim would properly be addressed by the Court. Specifically, defendant argued that many of the factual assertions underlying plaintiff's hostile work environment claim were time-barred. *See* Def.Mem. of Law at 17. Because plaintiff concedes that many of the factual allegations and arguments predicating plaintiff's disparate treatment and hostile work environment claim were the same, and defendant's moving papers addressed these points, plaintiff had adequate notice that this Court would address the hostile work environment in connection with defendant's motion for summary judgment on the disparate treatment claim. *See Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (holding that sua sponte dismissal is appropriate where plaintiff does not advance a cognizable or colorable claim); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 945 F.2d 53, 54 (2d Cir.1991) (sua sponte dismissal improper where defendant did not move for summary judgment and plaintiff did not have "adequate notice of the possibility of the entry of summary judgment") (per curiam); *Thompson v. Service Merchandise, Inc.,* 1998 WL 559735, at *4 (S.D.N.Y. August 11, 1998) (sua sponte dismissal of Title VII claims appropriate when plaintiff cannot recover as a matter of law).

**B. Plaintiff's Verified Complaint and EEO Documents**

Plaintiff next argues that her "Verified Amended Complaint" and EEO documents were affidavits within the meaning of FED. R.CIV.P. 56(e), sufficient to preclude summary judgment on her hostile work environment claim.

Treating plaintiff's Amended Complaint as an affidavit in support of her opposition to summary judgment does not yield a different result. Specifically, plaintiff's argument overlooks that the Court considered the alle-

gations in the Amended Complaint and various EEO documents in considering whether summary judgment should be granted on her hostile work environment claim. *See* Memorandum–Decision & Order at 29–32. Plaintiff appears to argue that the mere existence of a "verified" complaint automatically raises a genuine issue of material fact sufficient to preclude summary judgment. That argument is clearly without merit.

After determining that a majority of the allegations underlying plaintiff's hostile work environment claim were time-barred, and the remaining September 1997 incident was insufficient, as a matter of law, to establish a prima facie claim of hostile work environment, the Court granted defendant's motion for summary judgment on that claim. *See id.* at 32. Additionally, the Court properly considered all documents filed with the EEO agency in deciding defendant's summary judgment motion on all of plaintiff's Title VII claims. *See id.* at 33 n. 12. Accordingly, plaintiff's motion for reconsideration is DENIED.

**IT IS SO ORDERED.**