**Lisa K. GARDNER, Plaintiff,**

v.

**ST. BONAVENTURE UNIVERSITY and Terry Tambash, Defendants.**

**No. 00–CV–541A.**

United States District Court, W.D. New York.

Sept. 6, 2001.

Brady, Brooks & O'Connell, LLP, Salamanca, NY (Thomas C. Brady, Lori Pettit Rieman, of counsel), for plaintiff.

Damon & Morey LLP, Buffalo, NY (Charles S. Carra, of counsel), for defendant, St. Bonaventure University.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on July 19, 2000. On August 25, 2000, defendant filed a motion for motion to dismiss and for sanctions. On March 30, 2001, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendants' motion to dismiss should be granted in part and denied in part.

Both plaintiff and defendants filed objections to the Report and Recommendation on June 18, 2001. Oral argument on the objections was held on August 17, 2001.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendant's motion to dismiss plaintiff's third cause of action alleging violation of Title IX, and plaintiff's fifth cause of action alleging intentional infliction of emotional distress is granted and those claims are hereby dismissed. In addition, plaintiff's claims for punitive damages in her second cause of action, her fourth cause of action alleging common law negligence, and her sixth cause of action alleging negligent infliction of emotional distress, are dismissed pursuant to plaintiff's withdrawal of those claims. Defendant's motion to dismiss is denied in all other respects. The case is referred back to Magistrate Judge Foschio for further proceedings.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This case was referred to the undersigned on July 19, 2000 by Honorable Richard J. Arcara. The matter is currently before the court on Defendant St. Bonaventure University's motion to dismiss and for sanctions (Docket Item No. 9).[1]

### BACKGROUND

Plaintiff Lisa K. Gardner commenced this action on June 22, 2000, alleging six causes of action based on the termination of her employment with Defendant St. Bonaventure University ("Defendant" or "University") and the conduct of her supervisor, Defendant Terry Tambash, which Plaintiff alleges led to termination of her employment. In particular, Plaintiff alleg-

---

**1.** A motion to dismiss is considered dispositive, as opposed to a motion for sanctions which is nondispositive. In this case, Defendant has filed one motion seeking to dismiss certain claims based on lack of subject matter jurisdiction, failure to comply with the applicable statute of limitations or failure to state a claim, and to sanction Plaintiff pursuant to Fed.R.Civ.P. 11 for asserting those claims. As resolution of all issues in this motion is based on similar facts, the court addresses the issues together to facilitate judicial consideration.

es (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"); (2) sexual harassment in violation of New York Human Rights Law, as amended, N.Y.ExecLaw § 290 *et seq.*, ("NY HRL"); (3) gender discrimination in violation of Title IX of the Educational Amendments of 1972, as amended, 20 U.S.C. § 1681 *et seq.*, ("Title IX"); (4) New York common law negligence; (5) New York common law intentional infliction of emotional distress; and (6) New York common law negligent infliction of emotional distress. Pursuant to a Stipulation and Order filed July 31, 2000 (Docket Item No. 7), the instant action was dismissed as to Defendant Terry Tambash.

On August 24, 2000, Defendant moved to dismiss portions of the Complaint for lack of subject matter jurisdiction, expiration of the relevant statute of limitations, and failure to state a claim, including the Third, Fourth, Fifth and Sixth Causes of Action, and the Second Cause of Action to the extent it seeks punitive damages. The University also requests the court sanction Plaintiff pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") Rule 11 because the claims which Defendant seeks to dismiss are frivolous. Defendant's motion was accompanied by the Affidavit of Charles S. Carra, Esq. (Docket Item No. 10) ("Carra Affidavit"), a Memorandum of Law ("Defendant's Memorandum"), and an Appendix of Unreported Cases (Docket Item No. 12).

Plaintiff's response to the motion, filed December 29, 2000, consists of an Affidavit by Lori Pettit Rieman, Esq. (Docket Item No. 17) ("Rieman Affidavit"), and a Memo-

randum of Law (Docket Item No. 18) ("Plaintiff's Memorandum"). In her response, Plaintiff agrees to withdraw her Second Cause of Action insofar as it seeks punitive damages under N.Y. HRL, and her Fourth and Sixth Causes of Action respectively alleging New York common law negligence and negligent infliction of emotional distress. (Rieman Affidavit, ¶ 17). Defendant, on February 5, 2001, filed a Reply Memorandum of Law (Docket Item No. 20) ("Defendant's Reply Memorandum"), and an Index of Unreported Cases (Docket Item No. 21). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion to dismiss and for sanctions (Docket Item No. 9) should be GRANTED in part and DENIED in part.

### FACTS[2]

Plaintiff, Lisa K. Gardner ("Gardner"), commenced employment with Defendant St. Bonaventure University in January 1997.[3] In February 1998, Plaintiff was promoted to the position of Assistant to the Director of Security Services. Plaintiff was terminated on August 5, 1998 by George Solan, the University's Vice President for Student Life for improperly reporting her hours.

Gardner maintains that throughout her employment, she was repeatedly sexually harassed by Terry Tambash ("Tambash"), her male supervisor, who was the Director of the University's Security Services. The incidents of harassment included unwanted sexual comments and inquiries, constant telephone calls to Gardner's home and her other job, invitations to take trips or to go to other places that were not related to

---

**2.** The fact statement is taken from the Complaint.

**3.** Although the position for which Gardner was initially hired in January 1997 is not

alleged in the Complaint, the Complaint alludes to Plaintiff as working for the University's security department. *See* Complaint, ¶¶ 13, 14, 17.

Gardner's employment, visits to Gardner at her other employment, constant accusations regarding Gardner's alleged relationship with another male supervisor, offers of gifts, following Gardner and observing her at work, instructing Gardner as to how to dress and wear her hair, and inquiries as to whether Tambash could have physical contact with Gardner, including holding her hand and hugging her. When Gardner informed Tambash that his behavior was inappropriate and made her uncomfortable, Tambash told Gardner he loved her.

After Gardner confronted Tambash about his behavior, Tambash further harassed her by isolating her from and frequently confronting Gardner in the presence of other security officers. Tambash also conducted frequent surveillance of Gardner while she was on duty and instructed other security officers not to patrol with Gardner. On May 19, 1998, Plaintiff reported the constant harassment to Solan who was Tambash's supervisor, and Michelle Rodkey ("Rodkey").

Pursuant to her discussion with Solan and Rodkey, Gardner met with the University Advocacy Officer Sister Margaret Carney ("Sister Margaret"), Rodkey, Tambash and Solon. Following the meeting, Gardner was given a short leave of absence during which she was contacted by Sister Margaret who advised that Tambash wished to meet with Gardner and Sister Margaret. The meeting was held and Gardner again expressed her discomfort to Tambash and he agreed to abide by specific behavioral standards. However, a few days later, Tambash allegedly resumed harassing Gardner.

Gardner attempted to schedule another meeting, but was informed that Sister Margaret was out of town and would be unavailable for a few weeks. In Sister Margaret's absence, Gardner contacted Solan and informed him the harassment had not ceased. Solan allegedly advised Gardner to "be strong" and that Tambash would be different when he returned from a vacation. At a meeting on August 3, 1998, Gardner informed Solan that Tambash continued to telephone her at home unnecessarily and Solan responded that Tambash was permitted to telephone Gardner at home. Gardner claims that the University took no action to investigate or provide a remedy to Gardner in connection with the sexual harassment.

On August 6, 1998, Solan terminated Gardner for improperly reporting her hours. Gardner maintains that she had reported her hours according to the procedure established by Tambash. Gardner contends that the reason for her termination was pretexutal for the real reason, sex discrimination, and to retaliate against Gardner for complaining about Tambash sexually harassing her.

According to Gardner, Tambash's conduct and the University's failure to act to stop such conduct created a work environment that was permeated with discriminatory intimidation, ridicule and insult sufficiently severe and pervasive to alter the conditions of Plaintiff's employment. Gardner further maintains that such acts were so intentional, malicious, willful and wanton as to justify punitive damages. Plaintiff further maintains that, as a result of the claimed unlawful employment practices, she has lost income and benefits, suffered humiliation manifested in physical illness and stress and has suffered extreme mental anguish, severe anxiety about her future, embarrassment, damage to her reputation, disruption of her personal life, and loss of enjoyment of ordinary pleasures of life.

On October 5, 1998, Gardner filed a charge of discrimination with the Equal Employment Opportunity Commission

("EEOC") and the New York State Division of Human Rights ("DHR"), against both the University and Tambash. On June 12, 2000, Gardner received a Notice of Right to Sue from the EEOC.

### DISCUSSION

**1. *Subject Matter Jurisdiction the Retaliation Claim***

The University seeks to dismiss the Complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) insofar as it alleges a claim of retaliation under Title VII on the basis that Gardner did not assert a retaliation claim in the administrative charge filed with New York's Division of Human Resources ("Human Rights Charge"), and, therefore, administrative remedies as to that claim have not been exhausted.[4] Defendant's Memorandum at 6. The University also maintains that Gardner's retaliation claim cannot be considered as it did not occur subsequent to the filing of her Human Rights Charge. *Id.* at 8. Gardner asserts in opposition that the facts relative to her retaliation claim against the University are sufficiently set forth in her Human Rights Charge such that the University was on notice of a potential retaliation claim, Plaintiff's Memorandum at 5–6, and that the University's contention that Gardner's retaliation claim should be barred as it did not occur subsequent to the filing of her Human Rights Charge places an "extremely stringent standard" upon civil rights claimants. *Id.* at 5.

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that al-

leged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation & Development,* 990 F.2d 1397, 1401 (2d Cir.1993) (internal citation omitted). "This exhaustion requirement is an essential element of Title VII's statutory scheme," as Title VII's intended purpose to provide notice and encourage settlement of discrimination disputes would be defeated if litigation of a claim not previously presented to and investigated by the EEOC were permitted. *Butts, supra,* at 1401. *See Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000) (exhaustion of administrative remedies is a precondition to bringing a Title VII claim in federal court).

Under *Butts,* there are three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge, including: (1) claims where the conduct complained of would fall within the scope of the EEOC investigation; (2) claims alleging retaliation by an employer against an employee for filing an EEOC charge; and (3) claims where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Id.,* at 1402–03. In this case, the court finds that Garner's retaliation claim constitutes conduct complained of in her Human Rights Charge which would have fallen within the scope of the EEOC's investigation, the first type of "reasonably related" claims. The rationale behind recognizing as reasonably related claims in which the conduct complained of would fall within the scope of the EEOC's investigation "is essentially an allowance of loose pleading ... [in recognition of the fact] that EEOC charges frequently are filled out by employees without the benefit of

---

**4.** A copy of Gardner's charge filed with New York's Division of Human Rights is attached as Exhibit A to the Carra Affidavit.

counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering." *Butts, supra,* at 1402.

In her Human Rights Charge, Gardner names both the University and Tambash as respondents. Human Rights Charge at 1. In addition to recounting many alleged incidents of sexual harassment by Tambash, Human Rights Charge, ¶¶ 3–12, Gardner recites in detail her meetings with Solon, Rodkey and Sister Carney. *Id.,* ¶¶ 13, 15, 16. Gardner also states that at the end of the 1998 school year, Tambash advised her she could take a pager and go home at night, but that Tambash later accused her of leaving her shift without good reason and docked her two hours pay. *Id.,* ¶ 18. Following that incident, Gardner allegedly asked Solon for a list of her job responsibilities, but was advised to obtain such list from Tambash. *Id.,* ¶ 19. Tambash also allegedly told Gardner she would receive three hours of pay whenever she was paged outside her normal work hours, but was later accused of falsifying her time sheets for claiming she worked such hours. *Id.,* ¶ 20. Gardner states that on August 6, 1998, Solon advised that he intended to fire Gardner for falsifying her time sheet, but allowed Gardner to resign instead. *Id.,* ¶ 22. At her exit interview on August 10, 1998, Gardner told June Solon, Director of Personnel, that she believed she was wrongly terminated and wanted to appeal. *Id.,* ¶ 23. Her appeal was denied. *Id.* In the concluding paragraph of the Human Rights Charge, Gardner indicates her belief that she was sexually harassed and that her termination was based on such harassment. *Id.,* ¶ 26.

An EEOC investigation into Gardner's Human Rights Charge of sexual harassment would likely have included an inquiry into the termination of her employment, especially given the fact that Gardner named the University as a respondent and claimed that she was wrongfully terminated based on sexual harassment. Significantly, Gardner does not allege that any individual other than Tambash sexually harassed her. Accordingly, Gardner's claim that her termination was based on such harassment is logically construed as a retaliation claim based on her pre-termination complaints to Rodkey, Solon and Sister Margaret of Tambash's treatment. Further, that Solon initially advised Gardner he intended to fire her, but allowed Gardner to resign, can be interpreted as an indication that Solon did not truly believe he had cause to fire Gardner. Gardner's allegations in her Human Rights Charge regarding her termination thus provided sufficient notice on which the EEOC could investigate her retaliation claim and attempt to settle the dispute, in accordance with Title VII's intended purpose. *See Butts, supra,* at 1401.

Furthermore, there is no merit to the University's contention that Gardner's retaliatory discharge claim does not satisfy the "reasonably related" rule announced in *Butts* as her termination occurred prior to the date she filed her Human Rights Charge. A literal reading of one sentence in *Butts* does indicate that the "reasonably related" rule "only applies to claims that 'are based on conduct subsequent to the EEOC charge.'" Defendant's Memorandum at 7 (quoting *Butts, supra,* at 1401) (emphasis in original). However, a careful reading of *Butts* in its entirety demonstrates that such literal interpretation, *i.e.,* limiting "reasonably related" claims only to "conduct subsequent to the EEOC charge, was not intended".

The Second Circuit specified that the first type of "reasonably related" claim pertains to claims not raised in the original charge, yet also to those claims where "the conduct complained of would fall within the

'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Butts, supra,* at 1402 (citing *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978); *Gomes v. Avco Corporation,* 964 F.2d 1330, 1334 (2d Cir.1992); and *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 445 U.S. 924, 100 S.Ct. 1308, 63 L.Ed.2d 756 (1980)). It does not logically follow that the phrase "conduct reasonably expected to grow out of a charge of discrimination" was intended to refer only to conduct occurring *after* the filing of an EEOC charge. Notably, in *Butts,* the court analyzed pre-EEOC allegations under the reasonably related test, *Butts, supra,* at 1403–04, thereby failing to incorporate such temporal element into its own application of the test. Moreover, *Gomes,* cited in support of that principle, held that conduct not specifically alleged in the EEOC charge but which occurred before the filing of such charge was, nevertheless, sufficiently raised as to alert the EEOC to such alleged discrimination. *See Gomes, supra,* at 1334 (holding that although not separately raised, plaintiff's EEOC charge "most naturally supports a claim of intentional discrimination" based on violation of company promotion policy allegedly occurring prior to filing EEOC charge such that "the EEOC would reasonably have been expected to investigate whether the [company promotion policy] excluded [plaintiff] from higher paying jobs").

Similarly, in the instant case, Gardner's Human Rights Charge "most naturally supports a claim" of retaliatory discharge. Gardner alleges that she was hired for her job in January 1997, promoted in February 1998, but discharged in August 1998 for falsifying her time sheet, despite her protests that she was only following the procedure established by Tambash. Given that prior to her discharge, Gardner had alerted the University at least twice to the alleged sexual harassment to which Tambash had subjected her, it would have been perfectly natural for the EEOC to investigate Gardner's claims that she completed her time sheet as instructed by Tambash, whose apparent attraction to Gardner could be construed as motivating Tambash to incorrectly advise Gardner as to how to complete her time sheet to increase Gardner's pay and, thus, win Gardner's approval and affection. Further, it is reasonable to expect the EEOC to investigate whether any other reason existed for Gardner's termination given that Solon, who was advised of Gardner's complaints pertaining to Tambash, refused to provide Gardner with the list of responsibilities Gardner requested after Tambash docked her for two hours pay in connection with the first charge that Gardner had improperly completed her time sheets. Moreover, Gardner's allegation that she was terminated based on sexual harassment should have alerted the EEOC that Gardner was claiming the stated reason for her termination was merely pretextual. *Gomes, supra,* at 1334–35; *cf Cooper v. Xerox Corp.,* 994 F.Supp. 429, 435–36 (W.D.N.Y.1998) (Larimer, C.J.) (rejecting plaintiff's claim that retaliation claim was sufficiently raised in EEOC charge as "[t]here is nothing elsewhere in either the original or amended charge about [plaintiff] having voiced complaints about racial discrimination or hostile environment prior to his disability leave therefrom ... [such that] ... there is nothing in the charge to suggest [plaintiff] believed retaliation had anything whatsoever to do with his reassignment and/or discharge.").

Nor is *Fitzgerald v. Henderson,* 36 F.Supp.2d 490 (N.D.N.Y.1998), cited by the University, dispositive. At issue in that case was whether "vague, generalized statements" contained in the plaintiff's

EEOC charge alleging that plaintiff was sexually harassed by a supervisor were sufficient to alert the EEOC to a possible retaliation claim. *Fitzgerald, supra,* at 498–500. The court held such statements insufficient to establish the plaintiff engaged in a protected activity, *i.e.,* a complaint about sexual harassment, for which the aggressor retaliated against the plaintiff. *Id.* at 499. Although the plaintiff's retaliation claim was disallowed, the court noted that the issue as to whether allegations occurring *prior* to the filing of her EEOC charge could satisfy the "reasonably related" test articulated in *Butts* was unsettled. *Id.* at 500 n. 8.

In contrast, in *Ausfeldt v. Runyon,* 950 F.Supp. 478 (N.D.N.Y.1997), the court held that the "reasonably related" test was satisfied provided "the EEOC had enough notice of the alleged retaliation that its investigation should have included these assertions." In *Ausfeldt,* although the plaintiff failed to specifically allege retaliation in her EEOC charge, the court held that her allegation that the conditions of the alleged "hostile and abusive work environment include, but are not limited to, *false charges based on hearsay,*" and that she felt her career was threatened sufficiently suggested the plaintiff was being retaliated against. *Ausfeldt, supra,* at 486 (emphasis in original). Significantly, that such alleged conduct also occurred prior to the date the plaintiff filed her EEOC charge, further negates the University's contention that claims can only satisfy the "reasonably related" test if the conduct on which such claims are based occurred subsequent to the filing of the EEOC charge.

As such, the court finds that Gardner has exhausted her administrative remedies with regard to her Title VII retaliation claim. Defendant's motion to dismiss Gardner's Title VII retaliation claim for failing to exhaust administrative remedies should be DENIED.

## 2. *Failure to State a Claim*

■ The University seeks to dismiss Gardner's Third Cause of Action alleging a violation of her rights under Title IX because Title IX does not provide for a private right of action based on employment discrimination. The University also seeks to dismiss Gardner's Fifth Cause of Action alleging common law intentional infliction of emotional distress as time-barred and, alternatively, on the basis that the alleged conduct of which Gardner complains is not sufficiently extreme and outrageous to meet the strict standard applicable to such claims.

On a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996). The court is required to read the complaint with great generosity on a motion to dismiss. *Yoder v. Orthomolecular Nutrition Institute,* 751 F.2d 555, 558 (2d Cir. 1985). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985).

The issue on a motion to dismiss is not whether a plaintiff is likely to prevail ultimately, "but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very

remote and unlikely but that is not the test." *Weisman v. LeLandais,* 532 F.2d 308, 311 (2d Cir.1976) (quoting *Scheuer, supra,* at 236, 94 S.Ct. 1683). In the instant case, Defendant moves to dismiss those portions of the complaint for which Defendant maintains that Gardner can prove no set of facts entitling her to relief.

Pursuant to Fed.R.Civ.P. 12(b), if matters outside the pleading are presented to and not excluded by the court, a party's motion to dismiss under Fed.R.Civ.P. 12(b)(6) shall be treated as one for summary judgment and disposed of as provided by Fed.R.Civ.P. 56. However, where the party moving to dismiss has included in the motion papers information not found in the pleadings, provided the "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of transforming a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

In opposition to the motion to dismiss under Fed.R.Civ.P. 12(b)(6) the University relies on Gardner's Human Rights Charge. This document has been incorporated into Gardner's Complaint by reference. Complaint, ¶ 9. Therefore, as Gardner had actual notice of such document and relied on it in framing the Complaint Defendant's reliance on Gardner's Human Rights Charge does not require treating the motion to dismiss as a motion for summary judgment. *See Cortec Industries, Inc., supra,* at 48. Accordingly, the court treats the instant motion only as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and need not consider whether to convert the motion to one for summary judgment pursuant to Fed.R.Civ.P. 56, but may rely on Gardner's Human Rights Charge in determining the University's motion to dismiss.

### A. *Title IX*

■ The University argues that Gardner's Third Cause of Action asserting a violation of Title IX should be dismissed as Title IX does not provide for a private cause of action of employment discrimination for female employees of an educational institution. Defendant's Memorandum at 9; Defendant's Reply Memorandum at 3–4. Gardner asserts in opposition that although the Second Circuit has yet to rule on this issue, the court should consider extending the precedent set forth by several Supreme Court decisions to recognize the existence of a private cause of action of employment discrimination under Title IX. Plaintiff's Memorandum at 10–12.

Title IX provides, in relevant part:

[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance.

20 U.S.C. § 1681(a).

The Department of Health, Education and Welfare ("HEW") has promulgated related regulations to aid in the interpretation and enforcement of Title IX. See 34 C.F.R. § 160.1 *et seq.* ("HEW regulations" or "regulations"). As relevant, the regulations provide:

[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination in employment, or recruitment, consideration, or selection therefor, whether full-time or part-time, under any education program or activity

operated by a recipient which receives Federal financial assistance....

34 C.F.R. 106.51(a)(1).

The constitutionality of the HEW regulations was upheld by the Supreme Court. *North Haven Board of Education v. Bell,* 456 U.S. 512, 538, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982).

Title IX provides for a private right of action for gender-based discrimination. *Cannon v. University of Chicago,* 441 U.S. 677, 688–89, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (holding female denied admission to medical schools receiving federal financial assistance could pursue private cause of action against universities for sex discrimination). Title IX also prohibits gender-based employment discrimination. *Bell, supra,* at 530–31, 102 S.Ct. 1912 (upholding validity of HEW regulations prohibiting federally funded education programs from discriminating on the basis of gender with respect to employment). Further, the remedy of damages is available to an individual in an action to enforce Title IX. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). However, whether an employee of a federally funded education program can maintain a private right of action against the employer based on sex-based employment discrimination has not been resolved by the Second Circuit and there are contrasting opinions among the district courts within this circuit. *See Henschke v. New York Hospital–Cornell Medical Center,* 821 F.Supp. 166 (S.D.N.Y.1993) (holding Title IX's legislative history demonstrates Congress' intent to provide for private right of action for gender based employment discrimination against educational programs receiving federal funding). *Compare George v. Liverpool Central School District,* 2000 WL 1499342, *13 (N.D.N.Y.2000) (holding employee of an educational institution may not maintain private right of action for employment discrimination based on gender under Title IX where recourse under Title VII is available).

Courts refusing to recognize the existence of an employee's private right of action for employment discrimination under Title IX have generally refused to do so on the basis that acknowledging such an implied private right of action " 'would disrupt the carefully balanced remedial scheme of Title VII ... [which] Congress intended [ ] to provide an exclusive avenue of relief except for remedies already in existence at the time of [Title VII's] enactment.' " *George, supra,* at *13 (*quoting Vega v. State University of New York Board of Trustees,* 2000 WL 381430, *3 (S.D.N.Y. April 13, 2000)). Title VII, enacted in 1964, predates Title IX which was enacted in 1972.

However, the Supreme Court has held that although Title VII is intended as a comprehensive statute allowing remedies for invidious employment discrimination, Title VII does not limit the aggrieved individual's relief but, rather, may pursue other remedies he may possess for employment discrimination. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Nevertheless, to permit Gardner to pursue both a Title VII claim and a Title IX claim with regard to the alleged employment discrimination would provide Gardner with an additional remedy not available to Title VII claimants whose employers are not educational institutions in receipt of federal funds. Additionally, as Title IX does not require exhaustion of administrative remedies pursuant to a complicated scheme as with Title VII claims, permitting an employee of federally funded educational institutions to pursue a private right of action would allow such employee who failed to comply with Title VII's administrative

requirements to circumvent that those pre-requisites for access to federal court by seeking relief under Title IX. When Congress first contemplated the legislation that eventually became Title IX, Title VII exempted educational institutions from its coverage. *Lakoski v. James,* 66 F.3d 751, 757 (5th Cir.1995). When Title IX was enacted, however, language in Title VII exempting application of its coverage to educational institutions had been removed and, accordingly, Title IX, as enacted by congress, omitted the language that would have amended Title VII. *Lakoski, supra,* at 757.

Further, a fair reading of *Bell, supra,* supports the finding that in upholding the HEW regulations, the Supreme Court understood that Title IX was intended to bring to bear the power of HEW upon institutions within the reach of the statute to prevent and correct, through administrative proceedings, discriminatory practices relating to employees of such institutions on the basis of, *inter alia,* gender. However, this authority is a far cry from holding that Title IX also authorized, like Title VII, private causes of action in this court by the employee to remedy such discrimination.

For these reasons, the court finds that no private right of action exists for employees of federally funded educational institutions who are the victims of employment discrimination. Accordingly, the University's motion to dismiss Gardner's Third Cause of Action should be GRANTED.

## B. *Intentional Infliction of Emotional Distress*

The University asserts that Gardner's Fifth Cause of Action alleging common law intentional infliction of emotional distress claim must be dismissed as time-barred under New York's one year statute of limi-

tations for intentional torts. Defendant's Memorandum at 26. Alternatively, the University urges the court dismiss the claim because for failure to allege facts which state a *prima facie* case of intentional infliction of emotional distress under New York law. *Id.* at 27. Gardner contends that her intentional infliction of emotional distress claim is not time-barred as the applicable statute of limitations period was tolled pending the EEOC's administrative proceedings. Plaintiff's Memorandum at 13. Plaintiff further asserts that the Complaint sufficiently states a claim for intentional infliction of emotional distress and that whether she can recover on that claim is an issue of fact for the jury. *Id.* at 14–16. The court finds that Gardner's intentional infliction of emotional distress claim should be dismissed as time-barred. Alternatively, Gardner's Fifth Cause of Action states a claim for relief.

### 1. *Statute of Limitations*

■ The court borrows the relevant state statute of limitations as to pendent state claims, and the borrowed state statute of limitations are governed by its own rules of applications, tolling and revival, absent a conflicting federal policy underlying the cause of action. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 464, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Intentional tort claims are, under New York law, subject to a one-year limitations period. New York Civil Practice Laws and Rules ("N.Y.Civ.Prac.L. & R.") § 215(3) (" § 215(3)"). Further, a cause of action for an intentional tort accrues at the time of the injury, *i.e.,* when the plaintiff suffers severe emotional distress. *See Dana v. Oak Park Marina, Inc.,* 230 A.D.2d 204, 660 N.Y.S.2d 906, 910–11 (App.Div.4th Dep't 1997) (citing *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702

(1993)). In this case, the parties agree that Gardner's claim for intentional infliction of emotional distress accrued no later than August 6, 1998, the date her employment with the University was terminated. Defendant's Memorandum at 8, 26; Plaintiff's Memorandum at 13. As Gardner commenced the instant action on June 22, 2000, her intentional infliction of emotional distress claim is time-barred unless the one-year limitations period was tolled while her EEOC claim was pending. Defendant does not dispute that, with the benefit of Gardner's alleged toll, the claim would be timely.

In support of her argument in favor of such a toll, Gardner cites *Pan Am. World Airways Inc. v. New York State Human Rights Appeal Board,* 61 N.Y.2d 542, 475 N.Y.S.2d 256, 463 N.E.2d 597 (1984), and *Sciss v. Metal Polishers Union Local 8A,* 149 A.D.2d 318, 539 N.Y.S.2d 899 (App. Div. 1st Dep't 1989). However, both cases concerned the tolling of employment discrimination under N.Y. HRL, N.Y.Exec. Law § 297, rather than intentional torts. *Pan Am. World Airways, supra,* at 600; *Sciss, supra,* at 902. Accordingly, the cases do not support Gardner's argument that the applicable one-year limitations period for intentional torts was tolled while her administrative charge was pending before the EEOC.

The Second Circuit has not considered whether the filing of an administrative charge with the EEOC or the DHR tolls the statute of limitations as to all claims arising out of such charge until the relevant termination proceedings are pending, and the district courts within the Second Circuit are split on the question. *Forbes v. Merrill Lynch, Fenner & Smith, Inc.,* 957 F.Supp. 450, 455 (S.D.N.Y.1997). "Cases in support of tolling have done so for two reasons: (1) to avoid duplicative litigation and judicial inefficiency, and (2)

to further one of the central purposes of Title VII by allowing the EEOC the opportunity to investigate allegations of employment discrimination in order to facilitate dispute resolution before litigation commences." *Stordeur v. Computer Associates International, Inc.,* 995 F.Supp. 94, 99 (E.D.N.Y.1998) (citing *Forbes, supra,* at 456 (holding intentional infliction of emotional distress claim was tolled during the time a claim was filed with EEOC until the time that the EEOC gave plaintiff a right-to-sue letter)); *Anderson v. Yarp Restaurant, Inc.,* No. 94–CV–7543, 1996 WL 271891, at *2 (S.D.N.Y. May 21, 1996) (finding statute of limitations tolled during pendency of EEOC complaint involving allegations of sexual harassment); *Brown v. Bronx Cross County Medical Group,* 834 F.Supp. 105, 111 (S.D.N.Y.1993) (reasoning that not tolling statute of limitations while EEOC complaint was pending forces plaintiffs to pursue state claims in separate action resulting in judicial inefficiency and undermining purpose behind Title VII of resolving disputes prior to litigation). In *Brown v. Bronx Cross County Group,* 834 F.Supp. 105 (S.D.N.Y.1993), the court, finding that a plaintiff's common law intentional and negligent infliction of emotional distress claims were tolled while her administrative complaint was pending before the EEOC stated that:

> [t]o hold that the statute of limitations on plaintiff's state law claim was not tolled would obligate plaintiffs in Ms. Brown's position to bring their state claims in state court regardless of the degree to which such proceedings would result in duplication and judicial inefficiency, or, alternatively, to forego their state law claims.

*Brown, supra,* at 111.

The weight of authority, however, is against tolling state claims during the pendency of the EEOC claim. *See, e.g., Walk-*

er v. Weight Watchers Int'l, 961 F.Supp. 32, 36–37 (E.D.N.Y.1997) (holding statutes of limitation for state law intentional tort claims were not tolled during pendency of EEOC complaint because of the distinct and separate remedies provided for under Title VII and State law claims); Hall v. USAir, Inc., No. 95–CV–3944, 1996 WL 228458, at *7, *8 (E.D.N.Y. April 29, 1996) (refusing to toll statute of limitations for intentional infliction of emotional distress during pendency of EEOC complaint); Gray v. Shearson Lehman Bros., Inc., 947 F.Supp. 132, 137 (S.D.N.Y.1996) (holding plaintiff's whistleblower limitations period did not toll during time EEOC claim was pending); Lamb v. CitiBank, N.A., No. 93–CV–2358, 1994 WL 497275, at *8 (S.D.N.Y. Sept.12, 1994) (finding state claim of intentional infliction of emotional distress distinct from title VII and Section 1983 claims and thus refusing to toll statute of limitations); Taylor v. Levine, No. 83–CV–4247, 1985 WL 3406, at *2 (E.D.N.Y. Jan.11, 1985) (reasoning that federal law does not affect state statutes of limitation, the court rejected plaintiff's argument that statute of limitations for state defamation action was tolled between the period of filing with EEOC and receipt of right-to-sue letter). Other circuits also have held that a state statute of limitations is not tolled by the pendency of an individual's administrative complaint filed with the EEOC. See, e.g., Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322–23 (7th Cir.1992) (filing of EEOC charge did not toll the statute of limitation on employee's state law invasion of privacy claim); Arnold v. United States, 816 F.2d 1306, 1312–13 (9th Cir.1987) (holding state law tort claims are not tolled during pendency of Title VII action); Dupree v. Hutchins Bros., 521 F.2d 236, 238 (5th Cir.1975) (finding state statute of limitation for § 1981 action was not tolled during pendency of EEOC claim).

Johnson v. Railway Express Agency, Inc. supra, while not directly on point, is instructive and points toward a finding against tolling. In that case, an African American employee filed a complaint with the EEOC alleging he was subjected to employment discrimination based on his race. Johnson, supra, at 455, 95 S.Ct. 1716. The plaintiff received his right-to-sue letter more than 3½ years later, and then initiated suit in federal district court asserting race-based employment discrimination in violation of Title VII and 42 U.S.C. § 1981. Id. at 456, 95 S.Ct. 1716. The § 1981 claim was governed by a one-year statute of limitations which the court held was not tolled during the pendency of the plaintiff's administrative complaint before the EEOC. Id. at 466, 95 S.Ct. 1716.

In determining that the relevant statute of limitations was not tolled, the Court compared the goals of Title VII with the procedural requirements of an EEOC claim, stating

[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. '[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.'

Johnson, supra, at 459, 95 S.Ct. 1716 (citing Alexander v. Gardner–Denver Co., 415 U.S. 36, 48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). The court further observed that § 1981 and Title VII "augment each other and are not mutually exclusive," Id. (quoting H.R.Rep. No. 92–238 p. 19 (1971)), while their coverage is not extensive. Id. Title VII's administrative requirements are not prerequisites to a § 1981 action,

and the remedies under Title VII and § 1981 are "separate, distinct, and independent." *Id.* at 461, 95 S.Ct. 1716. The Court acknowledge that Title VII "embodies a strong federal policy in support of conciliation and voluntary compliance," and absent tolling, a plaintiff would be forced "into premature and expensive litigation that would destroy" this policy goal. *Id.* at 465–66, 95 S.Ct. 1716. Nevertheless, the Court found the § 1981 remedy fundamentally separate and independent from the procedural labyrinth of Title VII as no policy reason excuses for the plaintiff's failure "to take the minimal steps necessary to preserve each claim independently." *Id.*

In the instant case, as with the § 1981 claim at issue in *Johnson, supra,* Gardner's state intentional infliction of emotional distress claim presents another avenue for relief outside of the EEOC's administrative route. The court is applying New York's one year statute of limitations directly applicable to the intentional tort claim, rather than borrowing the statute of limitations for application to a federal claim. Title VII's administrative prerequisites are not prerequisites for Gardner's state tort claims. Further, a Title VII claimant need not await the outcome of the EEOC's administrative process before commencing legal action but, rather, can demand a right-to-sue letter and institute a Title VII action after the passage of 180 days from the date the EEOC complaint is filed. 42 U.S.C. § 2000e–5(f)(1). In such case, a pendent state common law claim, such as Gardner's intentional infliction of emotional distress claim, could be timely filed at the same time as the Title VII claim. Finding that the state tort claim's period of limitations is not tolled while the EEOC's consideration of the Title VII action takes place is also consistent with the general principle that statute of limitations schemes are exclusively the prerogative of the legislature and, absent a clear legislative declaration that any tolling is permissible, the courts should be reluctant to imply one. *Iavorski v. United States Immigration and Naturalization Service,* 232 F.3d 124, 129 (2d Cir.2000) (citing *Burnett v. New York Cent. R.R. Co.,* 380 U.S. 424, 426, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)) ("The basic question to be answered in determining whether ... a statute of limitations is to be tolled, is one of legislative intent.").

For the above reasons, the court finds that the one-year limitations period applicable to intentional tort claims in New York was not tolled while Gardner's EEOC charge was pending. Accordingly, Gardner's Fifth Cause of Action asserting intentional infliction of emotional distress is time-barred and the University's motion to dismiss that cause of action should be GRANTED. Should the District Judge find the one-year statute of limitations applicable to Gardner's intentional infliction of emotional distress claim was tolled while her EEOC charge was pending, the court, in the alternative, finds that Gardner's Fifth Cause of Action states a claim for relief.

### 2. *Prima Facie Case*

■ The New York tort of intentional infliction of emotional distress has four elements, including: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of substantial probability of causing, severe emotional distress; (3) causal connection between conduct and inquiry; and (4) severe emotional distress. *Howell v. New York Post Company, Inc.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993). "The first element—outrageous conduct—serves the dual purpose of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of

severe emotional distress is genuine." *Howell, supra.* Courts tend to focus on the outrageousness element as it is the element most susceptible to a determination as a matter of law. *Id.* " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* New York courts are very strict in applying this test. *Martin v. Citibank, N.A.,* 762 F.2d 212 (2d Cir.1985).

The University maintains that to state a claim for intentional infliction of emotional distress based on sexual harassment, Gardner must allege sexual battery. Defendant's Memorandum at 30; Defendant's Reply Memorandum at 10. In support of such contention, the University cites several cases in which claims for intentional infliction of emotional distress based on sexual harassment were dismissed either for failure to state a claim or on summary judgment based on the plaintiff's failure to demonstrate a battery. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1303 (2d Cir. 1995); *Matute v. Hyatt Corp.,* 1999 WL 135204 (S.D.N.Y. March 11, 1999); *Ponticelli v. Zurich American Ins. Group,* 16 F.Supp.2d 414, 440–41 (S.D.N.Y.1998); *Gilani v. National Association of Securities Dealers,* 1997 WL 473383, at *14 (S.D.N.Y. Aug.19, 1997). However, although in those cases the courts observed that the cases in which New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress based on sexual harassment generally involve allegations of battery or improper contact, New York courts have not held that such allegation is required to state or prevail on such claim.

Rather, in *Persaud v. S. Axelrod Company,* 1996 WL 11197 (S.D.N.Y. Jan.10, 1996), the court dismissed the plaintiff's sexual harassment-based intentional infliction of emotional distress claim in which the plaintiff alleged that a male co-worker continually asked her out, commented on her physical appearance, touched her hair and clothes, grabbed her waist, and spread rumors to other co-workers that he was involved in a sexual relationship with the plaintiff. *Persaud, supra,* at *4. The court held that such allegations, if proven, did not demonstrate the defendant "engaged in conduct so outrageous in character and extreme in degree as to do beyond all bounds of decency to intentionally inflict emotional distress on plaintiff." *Persaud, supra,* at *4. However, that plaintiff did not allege battery or significant contact did not factor in the court's decision.

Nor was the failure to allege battery or significant contact a stated reason for dismissing employment-based claims for intentional infliction of emotional distress in New York cases. *See e.g., Tramontozzi v. St. Francis College,* 232 A.D.2d 629, 649 N.Y.S.2d 43 (App.Div.2d Dep't 1996) (breach of employment contract claim relative to discharge based on dispute with employer was not allegation of "extreme, outrageous, or malevolent behavior"). In *O'Reilly v. Executone of Albany, Inc.,* 121 A.D.2d 772, 503 N.Y.S.2d 185, 186 (App. Div.3d Dep't 1986), the court affirmed the trial court's refusal to dismiss the female plaintiff's intentional infliction of emotional distress claim based on sexual harassment by male co-workers and supervisor who allegedly "repeatedly, intentionally, and maliciously" subjected the plaintiff to "sexual jokes, comments and inquiries, sexually oriented physical contact and gestures, sexually oriented practical jokes, the posting and presence of pornographic pictures and exposing sexual artifacts to Plaintiff." *O'Reilly, supra,* at 185. *See Collins v. Willcox,* 158 Misc.2d 54, 600 N.Y.S.2d 884, 886 (N.Y.Sup.1992) (holding

complaint alleging repeated advances of a sexual nature by supervisor despite plaintiff's continued refusal to expand relationship beyond professional one stated claim for intentional infliction of emotional distress).

As discussed, the issue on a motion to dismiss is not whether the plaintiff is likely to prevail on a certain claim but, rather, whether a generous reading of the complaint, *Yoder, supra,* at 558, demonstrates the plaintiff can prove no set of facts entitling her to relief. *Conley, supra,* at 45–46, 78 S.Ct. 99; *Goldman, supra,* at 1065. In the instant case, it would be error to prejudge the ultimate merit of Gardner's allegations, *i.e.,* whether the allegations sufficiently state a claim for intentional infliction of emotional distress, absent completion of discovery. In particular, further development of the facts may demonstrate that Gardner's claims as to the repeated and continual nature of Tambash's sexual advances toward her, despite her protests, that Tambash was Gardner's supervisor, that Tambash's reaction to such rejection by alienating Gardner from other security officers, thereby forcing Gardner to patrol by herself, that the conduct continued even after meeting with Solon, Tambash's supervisor, and Sister Margaret, the University's Advocacy Officer, and that Gardner was ultimately discharged on grounds which may ultimately be proven pretextual, be found sufficiently extreme and outrageous as to state a claim for intentional infliction of emotional distress. The court, therefore, finds the issue as to whether such allegations state a claim for intentional infliction of emotional distress would be more properly before the court on a motion for summary judgment, should Defendant choose to pursue that course.

Accordingly, should the district judge find that Gardner's intentional infliction of emotional distress claim is not time-barred, it should not be dismissed for failure to state a claim.

### 3. *Rule 11 Sanctions*

The University requests the court consider sanctioning Gardner pursuant to Fed.R.Civ.P. as reasonable review of relevant case law indicates Plaintiff's claims for relief under Title IX (Third Cause of Action), common law negligence (Fourth Cause of Action), intentional infliction of emotional distress (Fifth Cause of Action) negligent infliction of emotional distress (Sixth Cause of Action) and punitive damages under the New York Human Rights Law (Second Cause of Action), are neither supported nor warranted by existing law. Carra Affidavit, ¶ 12. As stated, Plaintiff has withdrawn her request for punitive damages as to her Second Cause of Action, as well as her common law claims for negligence (Fourth Cause of Action) and negligent infliction of emotional distress (Sixth Cause of Action). Rieman Affidavit, ¶ 17.

Fed.R.Civ.P. 11(c) provides that the court may impose an appropriate sanction upon any party that has presented frivolous claims to the court. Such sanctions may be of a nonmonetary or monetary nature and may include the payment of the attorney fees incurred by the defendant in opposing frivolous claims. Fed.R.Civ.P. 11(c)(2). In the instant case, the court does not recommend imposition of any sanctions against Gardner.

First, a motion for sanctions pursuant to Rule 11 is not to "be filed with or presented to the court unless, within 21 days after the service of the motion (or such other period as the court may prescribe), the challenged paper, claims, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A). In the instant case, there is

no indication that the University served Gardner with papers challenging the subject claims as frivolous, and then waited 21 days after such service before filing a Rule 11 motion as required by Rule 11(c)(1)(A).

Second, the court does not find any of Gardner's claims in this case sufficiently frivolous warranting entry, on the court's own initiative, pursuant to Fed.R.Civ.P. 11(c)(1)(B), an order for sanctions. In particular, Plaintiff has withdrawn several of her claims, including her request for punitive damages as to her Second Cause of Action, as well as her common law claims for negligence (Fourth Cause of Action) and negligent infliction of emotional distress (Sixth Cause of Action). Rieman Affidavit, ¶ 17. As to the remaining claims which the University seeks to dismiss, the court has found that the Complaint states a valid claim for retaliation (First Cause of Action). Although the court is recommending dismissal of Gardner's Title IX claim, the absence of any Second Circuit authority on this issue indicates the law is not necessarily settled as required to support finding such claim frivolous. Nor is the law settled as to whether the statute of limitations applicable to Gardner's common law intentional infliction of emotional distress claim is tolled pending administrative review. Further, although the court recommends that such claim be dismissed as time-barred, the court has alternatively found Gardner's Fifth Cause of Action of states a claim for common law intentional infliction of emotional distress.

As Gardner has withdrawn those causes of action which she has, upon further deliberation, decided are without merit, and as the court has found her remaining claims either have merit, or invoke unsettled law, sanctions pursuant to Fed.R.Civ.P. 11 shall not be imposed.

### CONCLUSION

Based on the foregoing, Defendant's motion to dismiss (Docket Item No. 9) should be GRANTED in part and DENIED in part. Defendant's request for Rule 11 sanctions is DENIED.

SO ORDERED as to Defendant's request for sanctions.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.